UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
02-CV-789(JMR/FLN)
02-CV-790(MJD/JGL)

Aaran Money Wire Service, Inc., and Garad Nor )
)
v. )
)
The United States of America, John Ashcroft, Paul H. O'Neill, Colin L. Powell, R. Richard Newcomb, and Robert S. Mueller III )

and ORDER

Global Services International, Inc., and Abdullahi Farah )
)
v. )
)
The United States of America, John Ashcroft, Paul H. O'Neill, Colin L. Powell, R. Richard Newcomb, and Robert S. Mueller III )

These lawsuits are consolidated for pre-trial purposes, and are before the Court on defendants' motion to dismiss. Defendants' motion is granted, the Court having determined that plaintiffs' complaints are moot.

As a collateral matter, plaintiffs Global Services International, Inc., and Abdullahi Farah move to amend their complaint. Their motion is denied, based on the Court's determination that an amendment would not best serve the interests of justice.

FILED AUG 2 1 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED AUG 2 1 2003
DEPUTY CLERK'S INITIALS

I. Background

Defendants contend the Court lacks jurisdiction under Article III of the Constitution because plaintiffs' complaints are moot. They move to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. In deciding such a motion, the Court may consider facts that have developed since the filing of the complaints. See Drevlow v. Lutheran Church, Mo. Synod, 991 F.2d 468, 470 (8th Cir. 1993) (a district court has the authority to look beyond the complaint and consider matters outside the pleadings on a motion challenging subject matter jurisdiction under Rule 12(b)(1)). The following facts are undisputed.

A. Facts Relevant to the Motion to Dismiss

Plaintiffs Garad Nor and Abdullahi Farah are both Somalia-born United States citizens. Mr. Nor and Mr. Farah each separately owned a financial wire-transfer business, which transferred funds primarily to Somalia and other East-African nations. Prior to November 7, 2001, Mr. Farah's business, Global Services International, Inc. ("Global Services"), transferred funds by wire to the Al-Barakaat wire transfer network. Mr. Nor's business, Aaran Money Wire Service, Inc. ("Aaran Money"), has never been associated with Al-Barakaat.

In the aftermath of the September 11, 2001, terrorist attacks on the United States, this nation, along with other nations and

international agencies, took steps to seize control of the financial assets of terrorists and those who provide them financial and other support. As part of those efforts, agents of the United States government raided Global Services and Aaran Money on November 7, 2001. The agents gave no prior notice of their entry and acted without search warrants. They seized property and sealed the premises of each business.

In coordination with these raids, the Department of the Treasury Office of Foreign Assets Control ("OFAC") issued blocking notices, designating Global Services and Aaran Money as specially designated global terrorists ("SDGTs"). These notices froze each business's financial assets and blocked the transfer of any property under their control.

On November 15, 2001, the government searched Mr. Farah's residence, this time acting with a search warrant, and seized certain property. On November 30, 2001, OFAC issued a blocking notice against Mr. Nor individually, and added Global Services, Aaran Money, and Mr. Nor to its master list of terrorists and other blocked persons.

The government took these actions pursuant to Executive Order 13,224, issued by President Bush, effective September 24, 2001. See generally Exec. Order No. 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001). The President's Order invoked the authority of the International Emergency Economic Powers Act of 1977, 50 U.S.C. §§

1701 et seq., and several other national and international laws. See id. The Order declared a national emergency with respect to the threat of terrorist attacks, and authorized, inter alia, the Secretary of the Treasury to block the assets of individuals and entities who provide support for, or are associated with, designated terrorists and terrorist organizations. See generally id. The Order further declared that "there need be no prior notice of a listing or determination made pursuant to this order." Id. § 10.

The Order also authorized the Secretary of the Treasury to delegate authority to implement the Order, see id. § 7. The Secretary of the Treasury delegated this authority to OFAC, which promulgated record-keeping and procedural regulations concerning designation and blocking. These regulations permit a designated individual or entity to apply to OFAC for a license to engage in a transaction with blocked property. See 31 C.F.R. §§ 501.801-802. The regulations also establish procedures for administrative reconsideration of designation and blocking determinations. See 31 C.F.R. §§ 501.806-501.807.

In December, 2001, in response to the government's actions, and pursuant to these regulations, Global Services, Aaran Money, and Mr. Nor petitioned OFAC to unblock their frozen assets and remove their names from the master list of terrorists. Alternatively, each sought a license permitting payment of certain

operating and living expenses from the blocked funds. Plaintiffs' counsel also requested licenses allowing them to receive attorneys' fees payments from the blocked funds.

On April 15, 2002, Global Services and Mr. Farah, and Aaran Money and Mr. Nor, filed their respective complaints in this Court seeking declaratory and injunctive relief. Aaran Money Wire Service, Inc., and Mr. Nor requested:

> 1. A declaration that Defendants' actions violate the Fourth, Fifth, and Sixth Amendments to the United States Constitution and the International Emergency Economic Powers Act;
>
> 2. A preliminary and permanent injunction directing Defendants to remove all restrictions on persons and property subject to Blocking Notice FAC No. SDT-196711;
>
> 3. A preliminary and permanent injunction directing Defendants to remove all restrictions on persons and property subject to the Blocking Notice;
>
> 4. A preliminary and permanent injunction directing Defendants to remove any designation of either Aaran or Mr. Nor as a "Specially Designated Global Terrorist," "Specially Designated National" or "Blocked Person" from all electronic and non-electronic publications issued by Defendants including, without limitation, OFAC's master list of "Specially Designated Nationals and Blocked Persons," its brochure on "Terrorism," and Appendix A to 31 C.F.R. chapter V;
>
> 5. A preliminary and permanent injunction directing Defendants to return all property seized from Aaran;
>
> 6. In the alternative, a preliminary and permanent injunction directing Defendants to issue a license to the undersigned counsel which would permit the receipt of funds from the blocked accounts for the

payment of Plaintiffs' legal fees and expenses;

7. In the alternative, a preliminary and permanent injunction directing Defendants to issue a license to Mr. Nor for the receipt of a salary and payment of basic expenses for food, clothing, shelter, transportation, utilities, and medical care; and

8. Such other and further relief as the Court deems just and equitable.

(Aaran Money Complaint at 16-17.)

Global Services and Mr. Farah's complaint requested substantially the same relief, but sought the following additional relief with respect to the designation of Global Services and the resultant blocking of funds:

1. A declaration that Defendants' actions violate the Fourth, Fifth, and Sixth Amendments to the United States Constitution and the International Emergency Economic Powers Act;

2. A preliminary and permanent injunction directing Defendants to remove all restrictions on persons and property subject to the Blocking Notice;

3. A preliminary and permanent injunction directing Defendants to remove any designation of GSI as a "Specially Designated Global Terrorist," "Specially Designated National" or "Blocked Person" from all electronic and non-electronic publications issued by Defendants including, without limitation, OFAC's master list of "Specially Designated Nationals and Blocked Persons," its brochure on "Terrorism," and Appendix A to 31 C.F.R. chapter V;

4. A preliminary and permanent injunction directing Defendants to return all property seized from GSI;

5. A preliminary and permanent injunction directing Defendants to release the $250,000 bond, and to return the portion of the property seized from Mr. Farah's residence that remains in the

government's custody and control; and

6. Such other and further relief as the Court deems just and equitable.

(Global Services Complaint at 14-15.)

On April 17, 2002, only two days after these complaints were filed, OFAC issued a license permitting plaintiffs' counsel to receive attorneys' fees from Aaran Money and Mr. Nor. On April 26, 2002, OFAC issued Mr. Nor a license permitting him to accept employment and debit his bank account for living expenses.

On May 21, 2002, OFAC sent letters to Global Services, Aaran Money, and Mr. Nor requesting information concerning their accounts and relationships with suspected terrorist entities. Plaintiffs supplied this information, and on August 27, 2002, the Department of Justice notified plaintiffs' counsel that the blocking notices were lifted, that plaintiffs' assets were unfrozen, that plaintiffs were de-listed, and that their seized property would be returned. Each of these promised actions has now been fulfilled.

The government moves to dismiss, contending the lawsuits are moot because all relief sought has been granted. Whether the suits are moot is the first question before the Court.

B. <u>Facts Relevant to the Motion to Amend</u>

After the government's motion to dismiss was briefed, but before argument, additional facts came to light that precipitated the motion to amend brought by Global Services and Mr. Farah.

On November 6, 2002, the day before the government raids on

Global Services and Aaran Money, Global Services wire transferred approximately $63,000 to Al Baraka Exchange LLC ("Al Baraka"). This transfer was frozen by an intermediary bank en route to Al Baraka, and remains blocked. After learning of this, Global Services filed a new application with OFAC for the release of these funds on February 24, 2003, more than ten months after these suits were filed. OFAC denied this request on March 12, 2003, reportedly because of Al Baraka's continuing designation as an SDGT.

Global Services and Mr. Nor contend their original complaint includes these funds in its prayer for relief. But they also seek leave to amend their complaint to clarify that these funds fall within its scope. The government contends these funds were not included in the original complaint, and that any challenge to the blocking of these funds should be brought in a separate proceeding. Thus, the continued blocking of this $63,000 raises two additional questions for the Court: First, whether the original complaint filed by Global Services and Mr. Farah includes this claim; and second, if it does not, whether leave to amend the complaint should be granted.

## II. Discussion

### A. Defendants' Motion to Dismiss

Defendants contend the Court lacks jurisdiction over this lawsuit at this time. They are right. "Federal courts are courts of limited jurisdiction and can only hear actual 'cases or

controversies' as defined under Article III of the Constitution." Hickman v. Missouri, 144 F.3d 1141, 1142 (8th Cir. 1998) (quoting Neighborhood Transp. Network, Inc. v. Pena, 42 F.3d 1169, 1172 (8th Cir. 1994)). Federal courts have neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants before them. See Preiser v. Newkirk, 422 U.S. 395, 401 (1975). An actual controversy must exist at all stages of review -- not only when a lawsuit is filed. See id. Therefore, when a lawsuit ceases to present an actual and ongoing case or controversy, it is moot, and a federal court lacks jurisdiction over it. Hickman, 144 F.3d at 1142. Applying these principles, the Court concludes that this case no longer presents an actual and ongoing case or controversy.

1. Plaintiffs' Claims to Injunctive Relief

Plaintiffs' complaints sought injunctive relief including the return of seized property, the removal of restrictions based on the blocking notices referenced in the complaints, and the removal of the designation of any of the plaintiffs as a "Specially Designated Global Terrorist," "Specially Designated National," or "Blocked Person." (Aaran Money Complaint at 16, ¶¶ 2-5; Global Services Complaint at 14-15, ¶¶ 2-5.) Alternatively, Aaran Money and Mr. Nor sought licenses granting them access to the blocked funds. (Aaran Money Complaint at 17, ¶¶ 6-7.)

Since filing the complaints, plaintiffs have received all the

relief they have requested. They acknowledge the return of their seized property, the lifting of the blocking notices, the unfreezing of their assets, and the de-listing of the three designated plaintiffs. (Plaintiffs' Opp. Mem. at 13.) Because plaintiffs received this relief, the injunctions they have requested in the alternative are unnecessary. They also received the licenses they sought from OFAC prior to their eventual delisting.

Because the government has granted all requested relief, there is no action for the Court to enjoin. See Iron Cloud v. Sullivan, 984 F.2d 241, 243 (8th Cir. 1993) ("There is no ongoing action on the part of the government for this Court . . . to enjoin."). "It is axiomatic that '[a] request for injunctive relief remains live only so long as there is some present harm left to enjoin.'" McClelland v. Gronwaldt, 155 F.3d 507, 514 (5th Cir. 1998) (citation omitted). Thus, plaintiffs' claims to injunctive relief are moot, unless an exception to the general doctrine applies; this, then, is the crux of the issue in this case. Cf. Smith v. University of Washington Law School, 233 F.3d 1188, 1193 (9th Cir. 2000) ("[T]he district court . . . could give no relief . . . . That is the short answer, but that alone will not do because this is an area rife with exceptions, qualifications, even quibbles. So we must go on.").

Although plaintiffs received all injunctive relief requested,

they nonetheless deny their lawsuits are moot, and remind the Court that "It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 189 (2000) (quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)). The government bears the stringent burden of persuading the Court that the challenged conduct cannot reasonably be expected to recur. Friends of the Earth v. Laidlaw Envtl. Servs., 528 U.S. 167, 189 (2000). The test is stringent, so that courts are not "compelled to leave 'the defendant free to return to [its] old ways.'" City of Mesquite, 455 U.S. at 289 n.10 (internal alterations and citations omitted).

The government acknowledges this law, but contends this exception is not applicable here. It is the government's position that the relief afforded plaintiffs is not the result of any voluntary cessation of a challenged practice, because the government stands by its designation and blocking programs. The government also contends this exception is inapplicable because plaintiffs achieved their desired relief as a result of their own pursuit of administrative remedies -- not because the government ceased any challenged conduct. Finally, the government contends this exception is inapplicable because there is no reasonable expectation that the challenged conduct will recur.

Plaintiffs respond that, rather than making the exception inapplicable, the government's maintenance of its policies and practices proves their claims are not moot. They deny they achieved relief through the administrative process, contending that the government's delisting, unblocking, and return of seized property was not the result of these efforts. Finally, plaintiffs contend that the government has not met its stringent burden of showing the challenged conduct cannot reasonably be expected to recur.

The Court finds the government's reasoning persuasive. The exception plaintiffs advocate is inapposite to the facts of these cases, and its blind application in these circumstances would be wrong. This is because plaintiffs mischaracterize the government's action. In short, the government has not ceased, either voluntarily or involuntarily, its challenged practice. Moreover, the government did not afford the plaintiffs relief in order to avoid a ruling on the merits.

Plaintiffs' complaints are moot because of government action: it delisted the three listed plaintiffs, unblocked their assets, and returned their property. But plaintiffs ultimately challenge the government's designation and blocking practices and policies. Cf. Smith v. University of Washington Law School, 233 F.3d 1188 (9th Cir. 2000) (considering whether the law school's change of admission policy triggered the exception); Sutton v. Rasheed, 323

F.3d 236 (3rd. Cir. 2003) (considering, inter alia, whether a change in prison policy mooted the case). But the challenged policies have not changed. Quite the opposite, the government continues to vigilantly enforce them.

The purpose of this exception to the general mootness doctrine also lends support to the Court's conclusion. The exception prevents defendants from avoiding judicial scrutiny by ceasing their illegal conduct. See, e.g., City News & Novelty, Inc. v. Waukesha, 531 U.S. 278, 284 n.1 (2001) (holding that the voluntary cessation exception to mootness "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." (internal quotation omitted)). That situation is, however, the polar opposite of the situation now before the Court. Here, the government continues to implement its designation and blocking policies. Therefore, the exception's purpose is not triggered by the facts of these lawsuits.

Indeed, the government is unlikely to avoid judicial scrutiny of its efforts in this area. There have been, and likely will continue to be, lawsuits challenging searches and seizures and other related government conduct taken in pursuit of the "War on Terrorism." See generally Holy Land Found. for Relief and Development v. Ashcroft, 219 F. Supp. 2d 57 (D.D.C. 2002), aff'd, 333 F.3d 156, (D. C. Cir. 2003); Global Relief Found., Inc. v.

O'Neill, 207 F. Supp. 2d 779 (N.D. Ill. 2002). Simply put, the government did not grant any relief to the plaintiffs in order to evade judicial review, and will not evade such review in the future.

Plaintiffs claim the government's grant of their requested relief shortly after these lawsuits were filed suggests a government effort to avoid a court ruling on the merits. But this mere temporal association is insufficient to support this inference because the government's grant of relief is clearly unrelated to the filing of these lawsuits.

Plaintiffs filed their complaints on April 15, 2002. Two days later, OFAC issued certain licenses to Aaran Money and Mr. Nor, and, on April 26, 2002, eleven days later, OFAC issued Mr. Nor another license. On May 21, 2002, OFAC requested certain information and, on August 27, 2002, apparently based on the information received, the Justice Department notified plaintiffs that the government had lifted its freezing orders, delisted the plaintiffs, and indicated that their seized property would be returned.

It is clear to the Court that these outcomes could not possibly have arisen as a result of these lawsuits.[1] Rather, it is obvious these outcomes resulted from plaintiffs' administrative

---

[1]As an aside, the Court only wishes that the threat of judicial scrutiny could compel any party -- let alone the sovereign -- to take steps to abate any activity within a matter of days.

petitions seeking relief. The government simply does not move that fast. There are reasons why the Federal Rules grant the Republic 60 days to answer a complaint. See Fed. R. Civ. P. 12(a)(3).

For all of these reasons, the Court concludes that this exception does not apply in the first place. But even if mootness did arise as a result of the government's voluntary cessation of challenged conduct, the Court agrees with the government that there is no reasonable expectation that the challenged conduct will recur to these plaintiffs. Plaintiffs argue that, because the government's policies have not changed, there exists a substantial risk that the government will continue to issue blocking notices against United States citizens, making them subject to the future risk of the government's conduct being repeated.[2] The government responds that, although it could decide to redesignate plaintiffs at some point in the future, any later designation would be based, at least in part, on new evidence and a new record. Therefore, any challenge to a redesignation would be intimately bound up with new facts.

The government's reasoning is persuasive. If the government's challenged conduct inheres in its policies, this exception is inapplicable because the policies have not ceased. Alternatively,

---

[2]The Court notes plaintiffs' counsel's acknowledgment at oral argument that her clients have left the wire transfer business and do not plan to pursue it in the future. This concession alone may well dispose of this issue.

if the government's challenged conduct is considered the prior designation of three of the plaintiffs and the consequent issuance of Blocking Notices FAC Nos. SDT-196711 and SDT-196715, this precise conduct cannot, by definition, happen again, and the government has met its burden of showing that it cannot reasonably be expected to recur.

In conclusion, this exception to mootness does not apply to these facts, and plaintiffs' claims to injunctive relief are moot; the Court lacks jurisdiction over them.

2. Plaintiffs' Claims For Declaratory Relief

Beyond their request for injunctive relief, plaintiffs ask the Court to declare that the government's actions violated several Constitutional provisions as well as the International Emergency Economic Powers Act. But here again, the government maintains plaintiffs' claims to declaratory relief are moot.

The mootness bar "applies with equal force to actions for declaratory judgment as it does to actions seeking traditional coercive relief." Marine Equip. Management Co. v. United States, 4 F.3d 643, 646 (8th Cir. 1993). The standard for determining whether a request for declaratory relief has become moot is whether the facts alleged show a "substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Preiser v. Newkirk, 422 U.S. 395, 402 (1975) (quoting Maryland Casualty Co. v. Pacific Co., 312 U.S. 270,

273 (1941) (emphasis in original)).

Because plaintiffs have received the specific relief they requested, these lawsuits no longer present an immediate and real controversy. See Flittie v. Erickson, 724 F.2d 80, 81 (8th Cir. 1983) (holding that, because plaintiff received the specific relief he requested through administrative processes, a substantial controversy between parties having adverse legal interests no longer existed). Plaintiffs clearly desire the Court's declaration that they are not terrorists and that they are not affiliated with terrorist entities. But the Executive Branch has already made this declaration by delisting the three previously-listed plaintiffs. Although plaintiffs express genuine concerns that they might be subject to future government actions similar to those challenged here, their concerns about future actions cannot be ameliorated by a judicial declaration about the government's past actions. Therefore, plaintiffs' claims to declaratory relief are also moot.

Moreover, even if these cases remained live, the Court might well decline to exercise its declaratory power, which is always discretionary. See Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995) (holding that district courts have discretion to determine whether to entertain an action brought pursuant to the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites). Judicial prudence suggests the Court should decline to do so for several reasons: "the obligation

of the Judicial Branch to avoid deciding constitutional issues needlessly," e.g., Christopher v. Harbury, 536 U.S. 403, 417 (2002); the possibility that the questions to which plaintiffs ask the Court to declare answers present non-justiciable political questions, see, e.g., Baker v. Carr, 369 U.S. 186, 198 (1962); and, most importantly, the fact that plaintiffs have received in full the injunctive relief they sought.

B. Global Services and Mr. Farah's Motion to Amend

Plaintiffs Global Services and Mr. Farah also seek the unblocking of the $63,000 currently held at the Bank of New York. They move to amend their complaint to clearly assert their request for the return of these funds. Their motion is denied.

The original complaint filed by Global Services and Mr. Farah does not speak to these funds. The complaint challenged Blocking Notice FAC No. SDT-196715, which designated Global Services as a "Specially Designated Global Terrorist" and blocked its assets. (Global Services Complaint at 3, ¶ 14, & 4, ¶ 16.) The complaint mentioned no other blocking notice or designation. In addition, the complaint sought an "injunction directing Defendants to remove all restrictions on persons and property subject to the Blocking Notice [FAC No. SDT-196715]" and an "injunction directing Defendants to remove any designation of GSI." (02-CV-790 Complaint at 14, ¶¶ 2-3.) The prayer for relief included no reference to any other blocking notice or designation. Finally, the prayer for

relief sought an "injunction directing Defendants to return all property seized from GSI" (02-CV-790 Complaint at 15, ¶ 4), but the $63,000 at issue was not seized from Global Services, as it had already been wired and left GSI's possession and control. For these reasons, the original complaint cannot fairly be read to encompass these claims. To remedy this deficiency, plaintiffs request leave to amend.

Because plaintiffs seek to amend their complaint after defendants' motion to dismiss was brought, they may do so only by leave of the Court. Fed. R. Civ. P. 15(a). "[L]eave shall be freely given when justice so requires," id., but there is "no absolute right to amend a pleading," Hammer v. City of Osage Beach, 318 F.3d 832, 844 (8th Cir. 2003). For the following reasons, the Court concludes that allowing plaintiffs to amend their complaint does not best serve the interests of justice.

Whereas plaintiffs' original complaint challenged the designation and blocking of plaintiff Global Services, itself, the $63,000 wired on November 6, 2001, continues to be blocked based solely on the government's designation of its intended recipient, Al Baraka, as an SDGT. In other words, the designation of Al Baraka continues, irrespective of the prior designation of Global Services.

Moreover, according to the government, Al Baraka's designation

is based on different facts and a separate and distinct administrative record. Thus, any challenge to this designation would necessarily involve discrete legal issues rather than a challenge to the prior designation of Global Services. And denial of leave to amend is appropriate when "issues raised by the proposed amendment involve different factual and legal issues than the allegations in the original complaint." See Bell v. Allstate Life Ins. Co., 160 F.3d 452, 454 (8th Cir. 1998). That is the case here. Plaintiffs' original complaint does not challenge the designation of Al Baraka. Therefore, a challenge to the seizure of funds based on Al Baraka's designation is more properly brought in a separate proceeding.

In addition, a challenge to OFAC's decision to continue to block the $63,000 based on the designation of Al Baraka cannot provide plaintiffs an opportunity to revive their moot challenge to Global Services' own prior designation. Although plaintiffs' motion is not exactly tardy, its timing -- after plaintiffs have received the injunctive relief requested in their complaint and after the government has moved to dismiss -- lends additional support to the Court's denial of it.

Finally, plaintiffs will not be prejudiced, because they may elect to challenge Al Baraka's designation in a separate action. See, e.g., Brown v. Wallace, 957 F.2d 564, 566 (8th Cir. 1992). The only "prejudice" plaintiffs' counsel was able to identify at

oral argument was the additional filing fee. This is scarcely the kind of prejudice which justifies engrafting an entirely new lawsuit based on different facts onto an already moot case. The Court offers no opinion as to whether Al Baraka might be a Rule 19 indispensable party in any claim relating to the $63,000.

III. Conclusion

Plaintiffs' complaints are moot, and the Court therefore lacks jurisdiction over them. In addition, allowing plaintiffs Global Services and Abdullahi Farah to amend their complaint does not best serve the interests of justice.

Accordingly, IT IS ORDERED THAT:

1. Defendants' motion to dismiss [Docket Nos. 17 & 12] is granted.

2. The motion to amend by Global Services and Abdullahi Farah [Docket No. 22] is denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 21, 2003

JAMES M. ROSENBAUM
United States Chief District Judge